## Lowe v. Commonwealth.

Jan. 10, 1939.

WILSON & WILSON for appellant.

HUBERT MEREDITH, Attorney General, and JOHN M. CAMP-BELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Under an indictment charging him with the murder of Hobart Mason, Andy K. Lowe has been convicted of voluntary manslaughter and his punishment fixed at eight years imprisonment. He is appealing.

The grounds relied on for reversal are (1) admis-

sion of incompetent evidence and (2) that the verdict is palpably and flagrantly against the weight of the evidence. The homicide occurred after dark on Saturday, December 18, 1937. Appellant, deceased, and others were riding to their home from Middlesboro in an automobile owned and driven by General Willis. As we understand the record the automobile was a coupe and deceased, appellant and Millard Partin were riding in the rumble seat. Just before the difficulty arose some whiskey belonging to appellant or deceased or to both of them had been placed in the rear of the automobile. While they were ascending the grade of the mountain Partin's hat blew off and some of the occupants of the rear seat knocked on the window and caused the car to stop so that they could get the hat. Partin who was a deputy sheriff had a pistol which either appellant or deceased took from him. Partin stated that deceased took the pistol from him and then appellant took it from deceased. At any rate appellant had the pistol from that time until he fired the fatal shot. One of the occupants in the front seat of the car testified that after the three went back of the car to look for Partin's hat he heard Partin say "Andy, don't do that," but Partin testified that appellant and deceased were in a scuffle and that he said, "Boys, don't do that." Before appellant and the other two returned to the car the father of appellant had found the whiskey in the rear and had broken the container and the evidence indicates that there was considerable discussion and manifestation of bad feeling over the loss of the whiskey on the part of both appellant and deceased. Apparently the others were concerned about appellant having possession of the pistol and were trying to get him to give it up but he stated that he would not do so until he got his whiskey. There is evidence that deceased took appellant's father to task for taking the whiskey. Appellant's father who was a deputy sheriff and some other members of the party went to a nearby telephone as they claim to call an officer and before they returned the shooting occurred.

All the witnesses testified that it was very dark and was difficult for them to see what took place after the automobile stopped. According to the evidence deceased procured and had in his hand a heavy iron automobile crank. One or more of the witnesses stated that one shot was fired and that some minutes thereafter appel-

lant and deceased went over the bank and another shot was fired. Deceased came back over the bank stating he had been shot. He was taken to a hospital where he died the following Tuesday morning. None of the parties saw appellant again that night and the evidence shows that he left immediately after the shooting. The bullet went entirely through the body of deceased.

The evidence of the commonwealth conduces to show that the bullet entered the lower part of the back a little to the right of the median line and came out over the left hip. There is conflict in evidence as to where the bullet entered. Some of the witnesses claiming to have knowledge of such facts stated that the bullet entered the back while others testified that it entered the front and came out at the back. Relatives of deceased who were with him at the hospital on Monday afternoon or evening testified that he was vomiting blood and had them call a physician and ask· the physician about his condition; that the physician shook his head and expressed doubt about his recovery. Some of them testified that he said in effect that he "reckoned" he would die and would never get home to see his children again and some who were with him practically all the time until his death testified that he never thereafter expressed or indicated any hope of recovery. There is evidence that he stated that he had done nothing to cause appellant to shoot him; that he came around the automobile and appellant met and shot him; that he did strike appellant but not until after he had been shot.

Appellant testified that deceased was claiming that he, appellant, owed him 35 cents and was insisting that it be paid; that after appellant took the pistol away from Partin and he got possession of it appellant got the automobile crank and struck him on the head and continued striking him until he shot him because he thought he was in danger of being killed or sustaining serious injury.

The doctor at the hospital testified that he did not remember making any statements in the presence of deceased's relatives importing doubt about his recovery and stated in substance that when deceased would be asked about his condition he would state that he was going to pull through. Apart from the statements of deceased admitted as a dying declaration there is ample evidence to show or which would necessarily give rise to

a reasonable inference that appellant and deceased were, at least, engaged in a mutual combat or sudden affray. However, in view of the conflict in evidence there is no escape from the conclusion that the evidence as to statements of deceased admitted as a dying declaration might have been and no doubt were an important factor in determining the jury's verdict and if improperly admitted would call for a reversal. Deceased was shot through the body and was in a serious condition as was evidenced by his death the following morning. According to the evidence of witnesses he fully realized the gravity of the situation and giving to his words the recognized colloquial meaning they clearly indicate a conviction and belief on his part that he would not recover, and in all the circumstances and the light of the authorities too well recognized to require citation it is obvious that the court did not err in admitting this evidence.

Doctors testified that in order to relieve the intense pain they administered opiates or sedatives to deceased and this at times probably rendered him irrational but they testified that he would have lucid intervals in which he talked rationally. Witnesses who testified as to statements made by deceased gave as their opinion that at the time he was in his right mind. Complaint is made of this evidence because it is the opinion of a nonexpert witness which is not admissible. These witnesses gave the basis for their conclusion which was that deceased fully recognized his relatives and others at the time and was talking in a rational manner. It is therefore our conclusion that no error was committed in this particular.

Finding no error in the record prejudicial to appellant's substantial rights the judgment is affirmed.